UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PRESTON WRIGHT ET AL.                                CIVIL ACTION

VERSUS                                               No. 16-11623

COMMON GROUND HEALTH                                 SECTION I
CLINIC, INC. ET AL.

## ORDER AND REASONS

Before the Court is a motion[1] for partial dismissal filed by all defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs oppose[2] the motion. For the following reasons, plaintiffs' claim under the National Defense Authorization Act ("NDAA"), 41 U.S.C. § 4712 *et seq.* is dismissed without prejudice and the case is remanded to the Civil District Court for the Parish of Orleans.

## BACKGROUND

Plaintiffs are Preston Wright ("Wright") and Michele Watson ("Watson"), formerly the chief executive officer and chief financial officer, respectively, of defendant Common Ground Health Clinic, Inc. ("Common Ground"), a nonprofit health clinic located in New Orleans. Common Ground is governed by a twelve member board of directors ("Board"), each of whom has also been made a defendant in this lawsuit. All of the individual defendants are being sued in their official capacities as members of the Board, except defendants Max Camp and Stephanie Bridges, who plaintiffs have sued in both their official and individual capacities.

---

[1] R. Doc. No. 8.
[2] R. Doc. No. 9.

As a federally qualified health center, Common Ground is a Health Center Program grantee which means that the clinic receives federal funding in the form of grants from the Health Resources and Services Administration ("HRSA") of the U.S. Department of Health and Human Services. As a grantee, Common Ground is subject to the requirements of 42 U.S.C. § 254b. Plaintiffs generally allege that after they were hired by Common Ground, they became aware that the clinic was not compliant with a number of the HRSA requirements necessary for it to receive grant funding. Plaintiffs reported these violations to HRSA officials on multiple occasions and notified the Board that they had done so. Plaintiffs were fired soon thereafter.

Wright and Watson claim that they were terminated in retaliation for reporting the noncompliance. They assert that defendants fabricated pretextual grounds for the termination, accusing Wright of failing to hire a medical director—something that potentially could have put the clinic at risk of being closed—and accusing both Wright and Watson of stealing money from patients. Wright and Watson claim that both accusations are demonstrably false, and that defendants knew they were false when they made them. Soon after these accusations were leveled, Wright and Watson were indefinitely suspended pending investigation of the claims. Wright was terminated shortly thereafter on April 29, 2016, and Watson was terminated on May 11, 2016.

Less than one week after Watson was fired, plaintiffs filed this lawsuit in the Civil District Court for the Parish of Orleans. Defendants timely removed. This Court has subject-matter jurisdiction over the lawsuit pursuant to 28 U.S.C. § 1331

and 28 U.S.C. § 1367.[3] Plaintiffs assert four claims in their state court petition, but only their claim under the NDAA arises under federal law. In their motion, defendants move to dismiss, inter alia, the NDAA claim because the statute requires exhaustion of administrative remedies and plaintiffs have not satisfied that requirement.[4]

## STANDARD OF LAW

Although defendants filed their motion pursuant to Rule 12(b)(6), the Fifth Circuit has held that administrative exhaustion requirements imposed by statute are jurisdictional, *Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 810 (5th Cir. 2016), and challenges to subject-matter jurisdiction are properly brought under Rule 12(b)(1). *Blankenship v. Buenger*, No. 15-50974, 2016 WL 3538829, at *2 (5th Cir. June 28, 2016). Accordingly, the Court evaluates defendants' challenge to Wright and Watson's NDAA claim pursuant to Rule 12(b)(1).

A motion to dismiss filed pursuant to Rule 12(b)(1) "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "At the outset [the Court] must emphasize a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings."

---

[3] R. Doc. No. 1.
[4] In the alternative, defendants argue that the NDAA claim should be dismissed at least as to the individual defendants because the statute only provides a private right of action against the employer, not against specific individuals who work for the employer. R. Doc. No. 8-1, at 7. The Court does not reach this argument.

3

*Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also* 5B Wright & Miller, Federal Practice and Procedure § 1350 (3d ed. 2013) ("As many judicial decisions make clear, a motion under Rule 12(b)(1) may be used to attack two different types of jurisdiction defects."). The Fifth Circuit has explained:

> A motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), can be based on the lack of jurisdiction on the face of the complaint. If so, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised—the court must consider the allegations in the plaintiff's complaint as true. But the two motions are treated quite differently when matter outside the complaint is the basis of the attack.

*Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981) (citation omitted). The court further explained by quoting the Third Circuit:

> The facial attack [on subject matter jurisdiction] does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* at 412-13 (quoting *Mortensen*, 549 F.2d at 891).

"The district court consequently has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* at 413. "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the

party asserting jurisdiction." *Edwards v. Burwell*, No. 15-10807, 2016 WL 4073298, at *1 (5th Cir. July 29, 2016).

In this case, the petition supplemented by undisputed facts as evidenced in the record convinces the Court that it lacks subject-matter jurisdiction over the NDAA claim, and therefore over this lawsuit.

## ANALYSIS

The NDAA is a whistleblower statute. It provides a private right of action to employees of federal contractors who are discharged or discriminated against in retaliation for disclosing information about regulatory violations to a federal entity responsible for overseeing the employer's federal contract.[5]

Section 4712(b)(1)of the NDAA provides:

**(b) Investigation of complaints.** –

**(1) Submission of complaint.** -- A person who believes that the person has been subjected to a reprisal prohibited by subsection (a) may submit a complaint to the Inspector General of the executive agency involved. Unless the Inspector General determines that the complaint is frivolous, fails to allege a violation of the prohibition in subsection (a), or has previously been addressed in another Federal or State judicial or administrative proceeding initiated by the complainant, the Inspector General shall investigate the complaint and, upon completion of such investigation, submit a report of the findings of the investigation to the person, the contractor or grantee concerned, and the head of the agency.

Section 4712(c) is titled "Remedy and enforcement authority." It provides that after receiving the Inspector General's report, the head of the agency shall "determine

---

[5] As a temporary pilot program, Section 4712 is effective only for a four-year period that began on July 1, 2013. 41 U.S.C. § 4712(i). The enactment of Section 4712 of the NDAA also served to temporarily suspend application of 41 U.S.C. § 4705, which was a similar provision that did not provide a private right of action. *See* 41 U.S.C. § 4705(f).

whether there is sufficient basis to conclude that the contractor or grantee concerned has subjected the complainant to a reprisal prohibited by subsection (a) and shall either issue an order denying relief or shall take one or more of [several actions]." 41 U.S.C. § 4712(c)(1). Section 4712(c)(2)—the provision whose significance the parties dispute—states as follows:

> **(2) Exhaustion of remedies. --** If the head of an executive agency issues an order denying relief under paragraph (1) or has not issued an order within 210 days after the submission of a complaint under subsection (b), or in the case of an extension of time under paragraph (b)(2)(B), not later than 30 days after the expiration of the extension of time, and there is no showing that such delay is due to the bad faith of the complainant, the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy. Such an action shall, at the request of either party to the action, be tried by the court with a jury. An action under this paragraph may not be brought more than two years after the date on which remedies are deemed to have been exhausted.

Defendants interpret Section 4712(c)(2) as requiring the exhaustion of administrative remedies before an aggrieved employee can file a lawsuit. Plaintiffs do not dispute that they failed to exhaust administrative remedies, but instead argue that exhaustion is not required. They assert that defendants' position is belied by the language of Section 4712(b)(1), which states that "[a] person who believes that the person has been subjected to a reprisal prohibited by subsection (a) *may* submit a complaint to the Inspector General of the executive agency involved." (emphasis added). Plaintiffs argue that "had Congress intended that Plaintiffs be required to

6

exhaust their administrative remedies prior to filing suit, it would have used the word 'shall' instead of 'may.'"[6]

Defendants' interpretation is the correct one. "The appropriate starting point when interpreting any statute is its plain meaning." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005). "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Id.*

The plain language of the statute clearly compels the view that administrative exhaustion is required. Indeed, the first clue is that Congress actually titled Section 4712(c)(2) "Exhaustion of remedies." Second, the statute explicitly states that "[i]f the head of an executive agency issues an order denying relief under paragraph (1) or [fails to act within the prescribed time periods], the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity . . . in the appropriate district court of the United States." U.S.C. § 4712(c)(2). There is no reasonable interpretation of this provision other than that advanced by defendants.

Contrary to plaintiffs' arguments, the use of the word "may" in Section 4712(b)(1) does not indicate that an aggrieved employee may forego the administrative process and proceed straight to court. Rather, the term "may" simply signifies that a person who has been subjected to a reprisal prohibited by the statute is not commanded to file a claim. In other words, Section 4712 does not impose a

---

[6] R. Doc. No. 9, at 8.

mandatory reporting requirement on those persons whose rights are violated. If the person does want to obtain relief under the statute, however, the statute makes clear that he or she must first complain to the Inspector General.[7]

The only other court to address this issue has also held that exhaustion is required. In *Moore v. University of Kansas*, 118 F. Supp. 3d 1242, 1253 (D. Kan. 2015), the district court considered and rejected the same arguments relied upon by plaintiffs in this case. In addition to grounding its decision on the plain language of the statute and the implementing regulations, that court also considered the similarity between Section 4712 and other federal statutes which have been interpreted as requiring administrative exhaustion. The court looked to, for example, the whistleblower provision of the Sarbanes-Oxley Act. In that provision, codified at 18 U.S.C. § 1514A(b), Congress wrote:

> **(b) Enforcement Action.—**
>
> **(1) In general.—**A person who alleges discharge or other discrimination by any person in violation of subsection (a) *may* seek relief under subsection (c), by—
>
> **(A)** filing a complaint with the Secretary of Labor; or
>
> **(B)** if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity

---

[7] The plain language interpretation is supported by the applicable federal regulations. Specifically, 48 C.F.R. § 3.908-6(b), which is titled "Complainant's right to go to court," provides that once the Inspector General issues an order denying relief or once a certain amount of time after seeking such relief has passed, "[t]he complainant shall be deemed to have *exhausted all administrative remedies* with respect to the complaint [and he or she] *may bring a de novo action at law or equity*." (emphasis added). If there was any doubt, the implementing regulation clarifies that an aggrieved person's "right to go to court" depends on his having first exhausted his administrative remedies.

8

>  for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.

(emphasis added).  The Fifth Circuit has confirmed that this language in Sarbanes-Oxley imposes an administrative exhaustion requirement.  *See Wallace v. Tesoro Corp.*, 796 F.3d 468, 476 (5th Cir. 2015) (further recognizing that "[t]he scope of a judicial complaint is limited to the sweep of the [administrative] investigation that can reasonably be expected to ensue from the administrative complaint").

The district court in *Moore* further noted that "the NDAA provisions mirror those in the Defense Contractor Whistleblower Protection Act [("DCWPA")], 10 U.S.C. § 2409, which have been interpreted as having an exhaustion requirement of a jurisdictional character."  118 F. Supp. 3d at 1254 (citing *Manion v. Spectrum Healthcare Resources*, 966 F.Supp.2d 561, 565 (E.D.N.C.2013)).  "[A]s a matter of statutory interpretation, in determining the meaning of a particular statutory provision, it is helpful to consider the interpretation of other statutory provisions that employ the same or similar language."  *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 233 n.4 (5th Cir. 2001).  It is true that "identical language may convey varying content when used in different statutes, sometimes even in different provisions of the same statute."  *Yates v. United States*, 135 S. Ct. 1074, 1082 (2015).  But in cases such as this, where there is no discernible reason why the parallel language in the statutes should yield different interpretations, the similarity is telling.  The Court finds the analogy between Section 4712, the Sarbanes-Oxley whistleblower provision, and the DCWPA to be persuasive, and it further agrees with the reasoning in *Moore*.

9

While the court in *Moore* afforded the plaintiff an opportunity to amend his complaint to allege exhaustion of administrative remedies, this Court need not do so. Plaintiffs admit in their opposition brief that they have neither initiated nor completed the administrative review process.[8]

## CONCLUSION

Because plaintiffs have not exhausted their administrative remedies, this Court lacks subject-matter jurisdiction over their NDAA claim. This Court therefore lacks original jurisdiction over any of the claims in this lawsuit. "In order for a federal court to invoke supplemental jurisdiction under [*United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966)], it must first have original jurisdiction over at least one claim in the action." *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 222 (5th Cir. 2012). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447. Accordingly,

**IT IS ORDERED** that plaintiffs' NDAA claim is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**IT IS FURTHER ORDERED** that the above-captioned action is **REMANDED** to the Civil District Court for the Parish of Orleans.

New Orleans, Louisiana, September 9, 2016.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[8] *See* R. Doc. No. 9, at 8 ("Defendants' assertion that Plaintiffs' claim should be dismissed lacks merit, because the language of the NDAA specifically gives the Petitioners the option to choose which avenue they wish to pursue their claims, which they have done here.").